UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SARA CULPEPPER,

        Plaintiff,

vs.                                   Case No.  3:09-cv-397-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on February 24, 2005, alleging an inability to work since January 21, 2004.  (Tr. 62).  The Social Security Administration ("SSA") denied Plaintiff's claim initially and on reconsideration.  (Tr. 50-51, 57-58).  Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on May 16, 2007.  (Tr. 33, 456-90).  On September 21, 2007, the ALJ issued a decision finding Plaintiff was not disabled.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 14).

(Tr. 14-22).  Plaintiff filed a Request for Review before the Appeals Council, which was denied on March 13, 2009.  (Tr. 3-6).  Having exhausted all administrative remedies, Plaintiff timely filed her Complaint on May 4, 2009 (Doc. 1), seeking judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since January 21, 2004 due to inflammatory polyarthritis, plantar fasciitis, obesity, and degenerative joint disease.  (Tr. 62).

### B.    Summary of Applicable Evidence Before the ALJ

Plaintiff was 46 years of age at the time the ALJ conducted the administrative hearing.  (Tr. 460).  Plaintiff had a high school education and past work experience as an appointment setter, film developer, and grocery clerk.  (Tr. 84, 463).  Plaintiff asserts she became disabled on January 21, 2004 due to inflammatory polyarthritis, plantar fasciitis, obesity, and degenerative joint disease.  (Tr. 62). The following is a summary of Plaintiff's medical history, limited to the issues Plaintiff raises on appeal.

Plaintiff began seeing a rheumatologist, Meera Oza, M.D., FACR, on October 15, 2002, at which time x-rays were taken.  (Tr. 170).  The x-rays revealed evidence of mild degenerative disease in Plaintiff's knees; minimum periarticular osteopenia in Plaintiff's hands; and mild degenerative disease of Plaintiff's feet, including a plantar spur on the left heel.  Id.  On October 31, 2002, Plaintiff presented to Dr. Oza with complaints of moderate and constant pain in her knees and left shoulder, as well as pain in her hands and wrists when lifting items at work.  (Tr. 169).  Dr. Oza prescribed Methotrexate and

advised Plaintiff to continue the folic acid and ibuprofen treatments.  Id.  On November 11, 2002, Plaintiff told Dr. Oza she noticed some improvement after taking Methotrexate, but only for several days.  (Tr. 168).  Dr. Oza continued to evaluate Plaintiff monthly, noting Plaintiff's complaints of moderate to severe pain in her knees, hands, feet, left shoulder, and left hip – pain that increased with activity, yet decreased with the use of heat and medication.  (Tr. 165-68).

On April 14, 2003, Plaintiff presented to Dr. Oza with worsening pain, describing it as an eight of ten on the pain scale.  (Tr. 164).  In response, Dr. Oza increased Plaintiff's medications.  Id.  During a follow-up appointment on May 8, 2003, Plaintiff reported that although her pain level generally remained unchanged, there was some improvement given the increase in Methotrexate.  (Tr. 163).  Plaintiff also stated she had become very active at work (approximately seventy hours per week), resulting in recurrent shoulder pain.  Id.  As Plaintiff continued to have pain in her hips, knees, and feet, Dr. Oza increased Plaintiff's Methotrexate dosage and added prednisone to her medication regimen.  (Tr. 162).  On July 25, 2003, Plaintiff presented to Dr. Oza with additional pain in her right hip and lower back as a result of falling on her back one week prior to the appointment.  (Tr. 161).  Plaintiff also explained her pain was becoming more severe in the afternoons after work.  Id.  On September 12, 2003, Plaintiff complained of increasing knee and foot pain.  (Tr. 160).  Dr. Oza increased Plaintiff's dosage of prednisone due to her improvement on both it and the ibuprofen treatment.  Id.

On September 19, 2003, Dr. Oza took x-rays of Plaintiff's spine and pelvis, which showed a slight decrease in bone mineralization, mild degeneration of discs affecting

L5-S1, degenerative disease of the facet joints, some sclerosis of the left sacroiliac joint, and evidence of early osteoarthritis of the hip joints.  (Tr. 159).  Over the next several months, Plaintiff claimed she was doing well on the medication treatment, with an existing pain level of six to seven out of ten.  (Tr. 156-57).

During this time, Dr. Oza referred Plaintiff to Dr. George Tellam, D.P.M., for evaluation of her foot pain.  (Tr. 178).  Dr. Tellam diagnosed Plaintiff with plantar fasciitis of the left foot and rheumatoid arthritis.  (Tr. 177).  On November 20, 2003, Dr. Tellam performed an excision of the plantar calcaneal exostosis of Plaintiff's left foot.[2] (Tr. 181).  On April 19, 2004, Plaintiff presented to Dr. Oza with moderate knee and hip pain and worsening pain in her hand, yet noted prednisone was helping.  (Tr. 149).  By July 2004, Plaintiff was experiencing only mild to moderate pain.  (Tr. 142).

On October 13, 2004, Plaintiff told Dr. Oza her pain was increasing at night and by February 2005, Plaintiff's pain was significantly interfering with her sleep.  (Tr. 121, 134).  Dr. Gopal Chandran, M.D., on behalf of Dr. Oza, found Plaintiff had bilateral tenderness over the trochanteric bursa area and gave Plaintiff a steroid injection to the site.  (Tr. 121).  Upon receipt of the injection, Plaintiff felt immediate relief.  Id.  Upon follow-up with Dr. Oza on March 10, 2005, Plaintiff complained of worsening pain, including severe pain in her hands, hips, and knees.  (Tr. 113).   The exam revealed synovitis of the MCP, PIP, and wrist joints; tenderness of both trochanteric bursae; and synovitis of both knees with tenderness of both anserine bursae.  Id.  As a result, Dr. Oza determined Plaintiff had active rheumatoid arthritis and bilateral trochanteric

---

[2] At the time of surgery, Plaintiff was placed on sick leave and never returned to work. (Tr. 463-64).

bursitis.  Id.  Dr. Oza provided Plaintiff with a Toradol IM injection and advised her to continue her medication regimen.  Id.  On April 19, 2005, Dr. Oza started Plaintiff on a HERO trial with Humira treatment weekly due to Plaintiff's assertion of constant, over-all body pain.  (Tr. 111).

On April 26, 2005, a state agency medical consultant, Ralph Cordova, III, M.D., completed an RFC assessment based on Plaintiff's rheumatoid arthritis.  (Tr. 205-12).  Dr. Cordova determined Plaintiff could: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand, sit, or walk for about six hours; push and/or pull without limitation; occasionally climb a ramp or stairs; never climb a ladder, rope, or scaffold; and occasionally balance, stoop, kneel, and crouch, but never crawl.  (Tr. 206-07).  In addition, the RFC showed Plaintiff was limited in handling and fingering.  (Tr. 208-09).

In July 2005, Plaintiff was referred to a pain management specialist, Frank R. Collier, Jr., M.D.  (Tr. 340).  Plaintiff presented to Dr. Collier with complaints of ankle, knee, wrist, hand, shoulder, and neck pain.  Id.  Plaintiff described her pain as seven to eight of ten and explained it was constant, occurred on a daily basis, and limited her overall functional activity.  Id.  General daily activities, including repetitive bending, lifting, standing, and walking aggravated Plaintiff's pain and she also described difficulty sleeping.  Id.  Upon examination, Dr. Collier noted Plaintiff's motor strength was intact in the upper and lower extremities, with some give way strength due to pain in both wrists.  Id.  The exam evidenced a mild restriction of lumbar motion in extension and bending, diffuse tenderness in the lumbar and cervical paraspinal musculature, tenderness across the shoulder and both trochanteric bursea, and tenderness in both hands.  Id.

Dr. Collier diagnosed rheumatoid arthritis; severe joint pain of the hands, wrists, knees, and ankles; and moderate discomfort in the hips and shoulders.  Id.  As a result, Dr. Collier recommended Plaintiff begin a Duragesic patch treatment and participate in an aquatic conditioning program.  Id.  During a follow-up appointment, Plaintiff rated her pain as five of ten, with the aquatic exercise program working well.  (Tr. 339).  Dr. Collier continued to treat Plaintiff's left shoulder flare-ups with steroid injections, from which Plaintiff noted significant improvement.  (Tr. 329-36).

On August 16, 2005, Dr. Oza opined Plaintiff had mild synovitis of the MCP and wrist joints and was suffering from active rheumatoid arthritis, obesity, and fibromyalgia. (Tr. 311).  He also noted that participation in an aquatic exercise program was helping Plaintiff manage her pain.  Id.  On this date, Plaintiff also met with Dr. Collier, who prescribed Lortab for Plaintiff's breakthrough pain.  (Tr. 338).  Over the next several months, Plaintiff presented to Dr. Oza with moderate to severe pain, including severe pain in her hands and hips.  (Tr. 303-09).

On September 7, 2005, a second state agency medical consultant, Eric C. Puestow, M.D., completed an RFC assessment based on Plaintiff's diagnosis of rheumatoid arthritis.  (Tr. 197-204).  Dr. Puestow found Plaintiff could: occasionally lift or carry ten pounds; stand or walk at least two hours; sit about six hours; push and/or pull without limitation; occasionally climb a ramp or stairs; never climb a ladder, rope, or scaffold; and occasionally balance, stoop, kneel, crouch, and crawl.  (Tr. 198-99).  Dr. Puestow opined Plaintiff's rheumatoid arthritis involved mostly the hands, hips, and knees, and that such pain arising from this condition was credible.  (Tr. 198, 202).

On March 28, 2006, Dr. Oza noted Plaintiff's decrease in pain and improvement

Page 6

in sleep as a result of a new Ultam treatment. (Tr. 302).  On May 19, 2006, two weeks prior to a trip to Holland, Plaintiff met with Dr. Oza.  (Tr. 298).  Plaintiff stated she was feeling better despite some pain in her joints and moderate to severe pain in her hands. Id.  On June 13, 2006, Plaintiff presented to Dr. Collier with moderate to severe flare-ups in her right shoulder and both knees.  (Tr. 328).  Plaintiff claimed that although she did not have significant problems during her trip, her current pain registered nine of ten. Id.  On June 27, 2006, Dr. Collier changed Plaintiff's medications as a result of her persistent extremity pain.  (Tr. 327).  Dr. Collier made a second modification to Plaintiff's medication regimen given her breakthrough pain and difficulty sleeping.  Plaintiff reported positive results.  (Tr. 323-26).

On September 5, 2006, Dr. Oza examined Plaintiff and found tenderness to both hands and the right shoulder, which coincided with Plaintiff's complaints of severe pain in these areas.  (Tr. 292).  Dr. Oza gave Plaintiff a steroid injection to the right shoulder since the medications did not seem to be alleviating Plaintiff's pain.  Id.  The next day, Dr. Oza took an x-ray of Plaintiff's cervical spine and found mild degenerative disc disease affecting C4-C5, C5-C6, and C6-C7.  (Tr. 291).  The x-ray of Plaintiff's hands revealed evidence of inflammatory arthritis.  Id.  Plaintiff continued her medication regimen with the addition of Toradol injections. (Tr. 287-290).  On September 7, 2006, Plaintiff's family practice physician, Gene Harris, M.D., found the bone density scans for Plaintiff's rheumatoid arthritis and inflammatory arthropathy were normal.  (Tr. 251).

As recommended by Dr. Oza, Plaintiff underwent breast reduction surgery on November 1, 2006, to ease her chronic neck, back, and shoulder pain.  (Tr. 351-54). On November 11, 2006, Dr. Collier updated Plaintiff's diagnosis to rheumatoid arthritis;

chronic, mechanical neck and lower back pain; hip and knee degenerative joint disease with subjective pain; degenerative joint disease; and chronic pain syndrome.  (Tr. 321). In January 2007, Dr. Collier's exam of Plaintiff showed an increase of mobility in lumbar motion and a decrease in tenderness over the paraspinous musculature.  (Tr. 320).

On February 6, 2007, Dr. Oza found synovitis of all MPC joints in Plaintiff's right hand, tenderness of the wrists and shoulders, and tenderness of the right bicipital tendon with reduced internal rotation.  (Tr. 286).  Plaintiff was directed to restart the Methotrexate and folic acid treatments and was also provided a Toradol injection since Plaintiff stated it helped ease her pain.  (Tr. 285-86).  On this date, Plaintiff also met with Dr. Collier due to upper back pain.  (Tr. 319).  The exam showed paraspinous tenderness over the paracervical region and good strength in the upper extremities.  Id.

On April 21, 2007, Dr. Harris completed an RFC Questionnaire regarding Plaintiff's limitations.  (Tr. 241-47).  Dr. Harris diagnosed Plaintiff with rheumatoid arthritis, plantar fasciitis, osteopenia, and early osteoporosis.  (Tr. 241).  As a result, Plaintiff had reduced range of motion in the hips, knees, and feet; joint warmth; reduced grip strength; sensory changes; impaired sleep; abnormal posture; tenderness; crepitus; trigger points; redness; swelling; muscle spasm, weakness and atrophy; and abnormal gait.  (Tr. 242).  Dr. Harris found the severity of Plaintiff's pain was enough to interfere constantly with her attention and concentration, making Plaintiff incapable of performing even "low stress" jobs.  (Tr. 242-43).  Further, Plaintiff could not walk a city block without rest or severe pain, but could sit for ten minutes and stand for five minutes at a time. (Tr. 243-44).  While Plaintiff needed to include five-minute periods of walking, she could only sit, stand, or walk for no more than two hours during an eight-hour work day.  (Tr.

244).  Dr. Harris stated Plaintiff should never lift and carry any weight; never twist, stoop, or crouch; and should never climb ladders and rarely climb stairs.  (Tr. 245).  Dr. Harris found Plaintiff had significant limitations in performing repetitive reaching, handling, or fingering and that Plaintiff could not spend any time using her hands, fingers, or arms for repetitive tasks.  (Tr. 246).  Ultimately, Dr. Harris opined Plaintiff was disabled and unable to work at any job given the severe pain emanating from her diagnosed medical conditions.  (Tr. 244-45, 247).

On April 22, 2007, Dr. Collier also completed an RFC Questionnaire regarding Plaintiff's limitations.  (Tr. 312-18).  Dr. Collier diagnosed Plaintiff with rheumatoid arthritis, fibromyalgia, and chronic pain syndrome.  (Tr. 312).  Dr. Collier noted Plaintiff's pain was constant, was activated by most movement and activity, and was severe enough to interfere with attention and concentration.  (Tr.312-13).  He noted Plaintiff's reduced range of motion affecting the shoulder, hip, and knee joints as well as Plaintiff's reduced grip strength, tenderness, joint instability, and muscle weakness.  (Tr. 313).  Dr. Collier stated Plaintiff was incapable of performing "low stress" jobs and that the medications taken could interfere with Plaintiff's ability to concentrate.  (Tr. 314).  Dr. Collier found Plaintiff could: walk one city block without rest or severe pain, sit for thirty minutes, stand for fifteen minutes, and stand/walk less than two hours or sit about two hours during an eight-hour work day.  (Tr. 312-15).  Further, he opined Plaintiff should include periods of walking during an eight-hour day, such as for five minutes every thirty-minute period, with the use a cane or other assistive device as needed.  (Tr. 315-16).  Dr. Collier determined Plaintiff could lift and carry occasionally no more than ten pounds, should rarely twist or stoop, and should never crouch or climb ladders or stairs.

(Tr. 316).  Lastly, Dr. Collier opined Plaintiff had significant limitations in performing repetitive reaching, handling, or fingering and that damp, cold environments could aggravate Plaintiff's symptoms.  (Tr. 317-18).

On May 1, 2007, Dr. Collier's examination of Plaintiff revealed mild restrictions in cervical mobility; good strength in upper extremities; tenderness of the right shoulder and occipital tendon; and notable discomfort in full abduction, extension, and rotation. (Tr. 420A).  Plaintiff was instructed to continue her medication regimen.  Id.  During her visit with Dr. Collier on June 28, 2007, Plaintiff began receiving Synvisc injections to her right knee.  (Tr. 419).  Given the positive results, Plaintiff also began receiving Synvisc injections to her left knee and steroid injections to her right shoulder and hip.  (Tr. 414-18).  Plaintiff continued to receive injections for several months, reporting marked pain relief in these areas.  (Tr. 407-419).

## C.    Plaintiff's Testimony at the Hearing

At the hearing before the ALJ on May 16, 2007, Plaintiff testified to having lower neck pain, which she rated as six of ten, but claimed it worsened to ten or more while bending her neck. (Tr. 465-66).  Plaintiff stated the pain radiated to her shoulders and particularly in the right shoulder, became worse when performing activities such as pulling or lifting.  (Tr. 466-67).  Plaintiff rated this pain as a minimum eight of ten.  Id. Plaintiff's continuing wrist pain and swelling resulted in a pain level of eight in the right wrist and a two in the left.  (Tr. 468-69).  Plaintiff attested to back pain, which worsened to a seven or eight while stooping or reading.  (Tr. 472).  Plaintiff also claimed daily, constant hip pain and knee pain with swelling.  (Tr. 472-73).  Plaintiff testified her medication treatments and steroid injections provided some pain relief, yet noted side

effects of hair loss and depression.  (Tr. 474-75).  Plaintiff's breast reduction surgery

also reduced the pain in her neck and shoulders by 30%.  (Tr. 476).  Plaintiff noted her

continued difficulty sleeping and resulting fatigue as well as difficulty with memory and

concentration.  (Tr. 477-78).  Plaintiff stated she could: stand for thirty minutes and for

no more than three hours during an eight-hour period; sit approximately forty-five

minutes to an hour; and walk half a city block, with occasional use of a cane.  (Tr. 478-

79).  Plaintiff stated she could only lift five pounds, could not kneel or stoop, and had

difficulty bending at the waist.  (Tr. 479).  Moreover, Plaintiff claimed an inability to open

jars; difficulty with reaching or grasping objects given resultant shoulder pain; and an

inability to sustain static neck positions, such as looking down for long periods of time

as this caused neck pain.  (Tr. 479-80).  Plaintiff's daily activities included completing

laundry for thirty minutes to one hour, loading the dishwasher, assisted grocery

shopping, going to church, reading, paying bills on the computer, and going to dinner or

attending her son's football and baseball games occasionally.  (Tr. 481-86).  Plaintiff

stated her activities were limited at times due to pain, including an inability to vacuum or

mop due to hand pain, an inability to stand in the choir at church, and an inability to

continue aquatic exercise as a result of worsening pain in her hips and knees.  (Tr. 481-

88).

### D.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520.  First, if a claimant is working at a substantial gainful activity, she is

not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any

impairment or combination of impairments which significantly limit her physical or

mental ability to do basic work activities, then she does not have a severe impairment

and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy,

then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of

the Act and was insured for benefits through March 31, 2009.  (Tr. 14).  At step one, the

ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset

date of January 21, 2004.  (Tr. 16).  At step two, the ALJ held Plaintiff had the following

severe impairments: inflammatory polyarthritis, plantar fasciitis, obesity, and

degenerative joint disease.  Id.  At step three, the ALJ concluded Plaintiff did not have

an impairment that met or equaled any of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (Tr. 17).

Next, the ALJ determined Plaintiff retained the residual functional capacity

Page 12

("RFC") to "perform sedentary work with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, and she must avoid work around hazards, extreme cold, and vibration." Id.  At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to conclude Plaintiff was capable of performing her past relevant work.  (Tr. 20).  The ALJ reasoned that such work did not require Plaintiff to perform work-related activities precluded by the RFC; thus, Plaintiff was able to perform this work as performed in the national economy.  (Tr. 20-21).  Although not required to do so, the ALJ proceeded to step five, and using the Medical-Vocational Guidelines ("the Grids"), determined that in the event Plaintiff could not perform her past relevant work, there would be other work existing in significant numbers in the national economy Plaintiff could perform.  (Tr. 21).  As such, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  Id.

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672

F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).  The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine the Commissioner properly applied the law.  Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

### B.    Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff asserts the ALJ erred in her treatment of the opinions of Plaintiff's treating physicians.  (Doc. 16, p. 1).  Second, Plaintiff alleges the ALJ erred by failing to make findings regarding Plaintiff's upper extremity limitations given Plaintiff's report of such limitations and pain.  Id.  In response, the Commissioner argues the ALJ's decision to discredit the opinions of Plaintiff's treating physicians was legally proper and supported by substantial evidence.  (Doc. 17, p. 9-10).  Moreover, the Commissioner posits the ALJ properly considered Plaintiff's complaints of manipulative limitations and determined Plaintiff's statements were not

entirely credible.  (Doc. 17, p. 14).

### 1.    Whether the ALJ erred by not crediting the opinions of Plaintiff's treating physicians.

The Court will first address Plaintiff's arguments regarding the treating physicians' opinions.  Plaintiff asserts the ALJ erred by discrediting the medical opinion evidence of Dr. Collier and Dr. Harris and by failing to explain why the opinion of Dr. Oza was not granted due weight.

### a.    Dr. Collier and Dr. Harris

Plaintiff contends Dr. Collier, as a pain management specialist, was qualified to render an opinion as to the impact of Plaintiff's pain - an opinion supported by x-ray and other objective testing.  (Doc. 16, p. 16).  Additionally, Plaintiff claims Dr. Harris, who had been treating Plaintiff for an extended time, was familiar with Plaintiff's conditions and limitations and issued an RFC assessment based on his diagnosis of Plaintiff's medical conditions, which included rheumatoid arthritis and early osteoporosis.  Id.  In response, the Commissioner asserts that because the opinions of Drs. Collier and Harris were inconsistent with the record as a whole, the opinions were entitled to less weight.  (Doc. 17, pp. 10-11).

The opinion of a treating physician will be given controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques.  Poplardo v. Astrue, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *10 (M.D. Fla. Jan. 4, 2008) (citing 20 C.F.R. § 416.927(d)(2)).  Treating physicians are granted this deference because they are most able to provide a detailed, longitudinal picture of the patient's medical status.  Id.  However, where some medical evidence is deemed

inconsistent with the treating physician's opinion, the ALJ should still give that opinion "substantial or considerable weight unless 'good cause' is shown to the contrary." Id. (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has found "good cause" to exist when: (1) a treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with his/her own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).  If the ALJ decides to grant less than substantial or considerable weight to a treating physician's opinion, the ALJ's reasons must be clearly articulated.  Lewis, 125 F.3d at 1440.  A failure to do so is reversible error.  Id.

In this case, the ALJ considered the RFC Questionnaires completed by Dr. Collier and Dr. Harris, but assigned them only minimal weight.  (Tr. 20).  The ALJ deemed the limitations set forth by both physicians to be "so extreme as to be unrealistic and inconsistent with their treatment records as well as the claimant's own activities of daily living."  Id.  The ALJ provided the following reasons for her conclusion: (1) neither physician was a specialist in connective tissue disorders; (2) Dr. Collier's treatment records indicated Plaintiff had responded well to medications and injections, with no evidence revealing the presence of "significant and persistent adverse side effects" that would have limited Plaintiff beyond that outlined in the RFC; and (3) the physicians' RFC limitations were exceeded by Plaintiff's performance of daily activities.  Id.  Although the ALJ articulated reasons for assigning minimal weight to Dr. Collier and Dr. Harris's opinions, the Court finds her rationale as to Dr. Collier's opinion not supported by substantial evidence, and thus, it does not meet the good cause requirement needed to

properly discount his opinion.  Garvey v. Astrue, No. 1:07-cv-21, 2007 WL 4403525, at

*7 (N.D. Fla. Dec. 12, 2007) (reasons for granting little weight to treating physician's

opinion must be supported by substantial evidence) (citing Marbury v. Sullivan, 957 F.2d

837, 841 (11th Cir. 1992) (per curiam) (Johnson, J., concurring specially)).  However, the

Court finds substantial evidence exists to properly discount the opinion of Dr. Harris.

The ALJ's first reason for assigning minimal weight to the opinions of Dr. Collier

and Dr. Harris was that neither physician was a specialist in connective tissue disorders,

with Dr. Harris focusing primarily on the treatment of common illnesses.  (Tr. 20).

Plaintiff contends that because Dr. Collier was qualified to render an opinion and Dr.

Harris was familiar with Plaintiff's medical care and limitations, it was error for the ALJ to

discount their opinions.  (Doc. 16, p. 16).  The Commissioner responds that under the

regulations, it is proper for the ALJ to evaluate the specialty of a treating physician.

(Doc. 17, p. 12-13).  The Court agrees.  As provided in 20 C.F.R. § 404.1527,

specialization is one of the factors to be considered when determining the amount of

weight given to a treating physician's opinion.  Accordingly, it was not error for the ALJ to

consider the specialities of Drs. Collier and Harris in reaching her conclusion.  However,

it does not necessarily follow that medical source statements must be made by a

physician specializing in connective tissue disorders.  Acceptable sources for providing

evidence to establish a claimant's impairment(s) include all licensed physicians, and in

particular, treating sources.  20 C.F.R. §  416.902.  Here, Dr. Collier, as one of Plaintiff's

treating physicians, was able to provide an accurate opinion of Plaintiff's limitations given

his diagnosis of Plaintiff's rheumatoid arthritis, severe joint pain, degenerative joint

disease, and chronic pain syndrome, as well as in his subsequent provision of pain

management therapy.  Dr. Harris also showed similar acumen given his diagnosis of Plaintiff's rheumatoid arthritis, osteopenia, and early osteoarthrits; his performance of bone density scans to monitor these conditions; and his utilization of this information to render an RFC assessment.  See Stewart v. Astrue, 551 F.Supp.2d 1308, 1318-19 (N.D. Fla. 2008) (holding that family practice physician's opinion entitled to substantial weight given the substantial evidence on record; while physician did not perform orthopedic testing on claimant, he had examined claimant repeatedly and credited claimant's reports of pain, all of which were supported by MRI testing); Ortega v. Chater, 933 F. Supp. 1071, 1075-76 (S.D. Fla. 1996) (concluding ALJ failed to accord proper weight to opinion of claimant's treating physician where opinion was "consistent, extensive, and substantiated by objective medical evidence.").  Thus, while the ALJ did not err in considering the specialities of Dr. Collier and Dr. Harris, she did err in discounting their medical source statements on grounds they were not specialists in connective tissue disorders; such particularity is simply not required by the regulations.

Next, the ALJ found Dr. Collier's treatment records showed Plaintiff had responded well to medications and injections, and the medical records did not evidence "significant and persistent adverse side effects" that would have contributed to Plaintiff's limitations beyond that indicated in the RFC.  (Tr. 20).  Yet, the record as a whole paints a different picture.  The medical records include Dr. Collier's documentation of Plaintiff's complaints of pain, limitations in functioning, and varying degrees of success with medication and treatment prescriptions.  Specifically, Plaintiff continued to have break-through, roaming pain despite positive responses from the Synvisc and steroid injections.  Plaintiff noted that while she had some symptom improvement, the results

from the medications were not consistent or lasted for only several days.  Plaintiff also experienced side effects such as fatigue, confusion, depression, weight gain, hair loss, as well as elevated liver enzymes, which required a decrease in the Methotrexate treatment.  (Tr. 121, 465, 474).  Further, Dr. Collier's RFC assessment pointed to Plaintiff's constant pain as a source of functional limitation and indicated Plaintiff's medication could interfere with her ability to concentrate.  To bolster his opinion, there are notations in the record that Dr. Collier and Dr. Oza conferred regularly on Plaintiff's medical conditions and treatment options as Dr. Oza was prescribing a number of Plaintiff's medications.  Thus, the Court can reasonably infer that Dr. Collier based his RFC assessment not only on his own medical findings, but also on the treatment provided by Dr. Oza.  Because it is unclear to the Court whether the ALJ weighed Dr. Oza's opinion in evaluating Dr. Collier's assessment, combined with the aforementioned facts, the Court does not believe the ALJ's conclusion is representative of the entire record, and thus, supported by substantial evidence.  See Mathis v. Astrue, 3:06-cv-816-J-MCR, 2008 WL 876955, at *13-14 (M.D. Fla. Mar. 27, 2008) (concluding ALJ erred by failing to provide the requisite good cause for rejecting the opinion of claimant's pain specialist when: ALJ mischaracterized the pain claimant experienced following injection treatments and also failed to consider all evidence upon which treating physician relied).

Lastly, the ALJ was persuaded by Plaintiff's ability to perform daily activities despite her alleged pain.  Id.  The ALJ cited Plaintiff's ability to drive seven miles twice a day, watch her son's sports games, attend church once a week, go out to dinner, pay bills on the computer, and travel out of the country without difficulty.  Id.  In looking at the entire record, the Court is not convinced Plaintiff's daily activities vary grossly from the

recommendations issued by Dr. Collier or from Plaintiff's testimony at the administrative hearing.  Dr. Collier's RFC found Plaintiff could sit for thirty minutes, stand or walk for two hours, walk a city block, and walk for short periods of time during an eight-hour day. While Dr. Collier noted Plaintiff's significant limitations in repetitive reaching or fingering, he did not bar Plaintiff from performing such tasks.  Plaintiff's testimony disclosed she could sit for forty-five minutes to an hour, stand for thirty minutes and for no more than three hours during an eight-hour period, and walk half a city block with the occasional use of a cane.  Plaintiff also claimed difficulty with reaching or grasping objects.

Further, Plaintiff's testimony put the ALJ's findings into perspective.  Plaintiff revealed her participation in many of the activities referenced by the ALJ was occasional and limited at times due to pain; such assertions are also present throughout the medical records.  This leaves the Court questioning how the ALJ's interpretation of Plaintiff's daily activities is an accurate reflection of the record as a whole, and thus sufficient to properly discount the opinion of Dr. Collier.  See Garvey, 2007 WL 4403525, at *7 (concluding evidence of daily activities often deemed not substantial evidence when reviewed against record as a whole) (citing Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000)); Lewis, 125 F.3d at 1441 ("[We do not] believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by . . . [the] treating physicians.").

In light of these facts, the Court acknowledges that the recommendations issued by Dr. Harris are too narrow in scope to be deemed reasonable, and thus, consistent with the record evidence.  Dr. Harris opined Plaintiff could only sit for ten minutes or stand for five minutes and could not walk a city block without rest or severe pain.

Additionally, Dr. Harris noted Plaintiff should neither lift and carry any object, nor spend any time using her hands, fingers, or arms for repetitive tasks.  Notably, these limitations conflict with both Dr. Collier's RFC assessment and Plaintiff's performance of daily activities, thereby providing good cause for the ALJ to assign Dr. Harris's opinion minimal weight.  Fries v. Comm'r of Soc. Sec. Admin., 196 F.App'x. 827, 833 (11th Cir. 2006) (holding ALJ had good cause for granting minimal weight to treating physician's opinion since inconsistent with other evidence and claimant's description of daily activities); see also Kinnaird v. Barnhart, 138 F.App'x. 224, 228-29, n.7 (11th Cir. 2005) (finding ALJ had good cause to reject treating physician's opinion that claimant was unable to carry out meaningful work activities as opinion conflicted with claimant's testimony regarding daily activities).

Because the ALJ's articulated reasons as to Dr. Collier's opinion are not supported by substantial evidence, they fail to meet the "good cause" requirement. Accordingly, the ALJ erred by improperly discounting Dr. Collier's opinion.  Accord Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (where medical evidence does not conclusively counter the treating opinion, and no other good cause is presented, the opinion cannot be discounted); Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986).  However, the Court finds the ALJ satisfied the good cause requirement in discounting the opinion of Dr. Harris.  Thus, on remand, the ALJ is instructed to reconsider the weight given to Dr. Collier's opinion, keeping in mind that if she cannot point to substantial evidence in the record to do otherwise, she must grant it significant weight.

b.     **Dr. Oza**

Plaintiff also argues the ALJ erred by failing to explain why the opinion of Dr. Oza, as her treating rheumatologist, was not granted controlling weight.  (Doc. 16, p. 1). Plaintiff asserts Dr. Oza's opinion was entitled to such weight given his recordings of Plaintiff's pain in the treatment notes and the objective findings made during Plaintiff's examinations.  (Doc. 16, p. 10).  The Commissioner asserts Dr. Oza's treatment notes were not an opinion of Plaintiff's limitations, but rather simply reiterated Plaintiff's subjective complaints of pain.  (Doc. 17, p. 10).

To determine whether Dr. Oza's treatment notes constitute a "medical opinion," 20 C.F.R. § 404.1527(a)(2) provides:

> Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the] impairment(s), including [the] symptoms, diagnosis and prognosis, what [the] claimant] can still do despite the impairment(s), and [the] physical or mental restrictions.

While Dr. Oza's treatment records included diagnoses of Plaintiff's medical conditions, they did not reveal any resulting limitations on Plaintiff's ability to work.  Moreover, Dr. Oza never provided a separate opinion or medical source statement regarding Plaintiff's limitations.  Because there was no "medical opinion" issued by Dr. Oza upon which the ALJ was required to assign controlling weight, the Court finds no error.  Osborn v. Barnhart, 194 F.App'x. 654, 667-68 (11th Cir. 2006) (finding medical records revealed only diagnoses, not reasoned and medically-supported opinions detailing claimant's work limitations or limited functions; such is a requisite to a finding of disability and ALJ entitled to grant opinion minimal weight) (citing McCruter v. Brown, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the severity of a medically ascertained disability must be measured in

terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

### 2.     Whether the ALJ erred by not crediting Plaintiff's testimony of upper extremity limitations and pain.

Next, the Court addresses Plaintiff's second argument that the ALJ failed to make findings regarding Plaintiff's upper extremity limitations given Plaintiff's reports of such limitations and pain.  (Doc. 16, p. 1).  The Commissioner argues the ALJ considered Plaintiff's complaints about her manipulative limitations and determined Plaintiff's statements were not entirely credible.  (Doc. 17, p. 14).  Further, the Commissioner asserts the ALJ's decision was supported by both the medical records and Plaintiff's explanation of activity level, which showed Plaintiff's pain was not as severe as she alleged.  (Doc. 17, p. 15).

Pain is a non-exertional impairment.  <u>Foote</u>, 67 F.3d at 1559.  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

<u>Foote</u>, 67 F.3d at 1560 (quoting <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir.1991)).

Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury, 957 F.2d at 839, although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir.1988).

Since Plaintiff's claim of error deals only with the ALJ's treatment of Plaintiff's upper extremity limitations, the Court will confine its discussion to those limitations. Here, Plaintiff suffered from several medically determined impairments, including inflammatory polyarthritis, degenerative joint disease, and obesity.  The record, which incorporates Plaintiff's testimony before the ALJ, is replete with Plaintiff's affirmations of these impairments and the resulting pain.  After considering the evidence, the ALJ determined Plaintiff's impairments "could reasonably be expected to produce the alleged symptoms . . . ."  (Tr. 18).  Based on this language, the Court is satisfied the ALJ properly applied the "pain standard," including parts one and three of the test.  Poplardo, 2008 WL 68593, at *9 (concluding ALJ's assertion of: "[C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," was appropriate language to satisfy parts one and three of the pain standard) (citing Geiger v. Apfel, 6:99-cv-12-ORL-18B, 2000 WL 381920, at *7 (M.D. Fla. Feb. 9, 2000)).  However, the ALJ also found "[Plaintiff's] statements concerning the

intensity, persistence and limiting effects of [the] symptoms [were] not entirely credible."
(Tr. 18).  Since the ALJ chose to discount Plaintiff's testimony on the basis of credibility,
she was required to support her finding with a clear and adequate rationale.  The Court
finds the ALJ failed to do so in this case because she proffered no clearly articulated
reasons for finding Plaintiff's allegations not credible.  Since this omission resulted in a
misapplication of the "pain standard," and because pain is a material aspect of Plaintiff's
alleged disability, the Court is compelled to remand the case for a proper evaluation of
Plaintiff's subjective symptoms.  Poplardo, 2008 WL 68593, at *9 (citing Cannon, 858
F.2d at 1545); King v. Astrue, No. 3:06-cv-808-J-TEM, 2008 WL 697357, at *3-8 (M.D.
Fla. Mar. 13, 2008) (holding the ALJ improperly discredited claimant's subjective
allegations of disabling pain by failing to articulate explicit and adequate reasons; court
noted some information in record supported ALJ's decision, however, ALJ must still
provide sufficient rationale to "link [this] evidence to the legal conclusions reached")
(quoting Russ v. Barnhart, 363 F.Supp.2d 1345, 1347 (M.D. Fla. 2005)); Tauber v.
Barnhart, 438 F.Supp.2d 1366, 1379-80 (N.D. Ga. 2006) (finding ALJ failed to articulate
explicit and adequate reasons for weight given to claimant's subjective pain testimony;
ALJ needed to explain conflict between claimant's testimony and objective medical
evidence).  On remand, the ALJ shall reconsider Plaintiff's complaints of upper extremity
limitations and pain, and articulate specific reasons for her conclusion should she choose
to discredit Plaintiff's testimony.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED**
and **REMANDED** pursuant to sentence four, 42 U.S.C. § 405(g).  On remand, the ALJ

shall (1) reassess the weight accorded to Dr. Collier's opinion in light of the record as a whole and state with particularity the weight assigned to it and the reasons therefor; (2) reassess Plaintiff's testimony of upper extremity limitations and pain, providing specific reasons as to whether the testimony will be credited or discredited; and (3) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of the notice of award of benefits from the Social Security Administration.  **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this  18th  day of August, 2010.


_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record